**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEPHEN PECHAWER, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-6870** |
| **ART CATERING, INC. AND** | **SECTION: "C" (4)** |
| **TRANSOCEAN DRILLING (U.S.A), INC.** | |

## <u>ORDER AND REASONS</u>

Before the Court is a Motion for Partial Summary Judgment filed by defendant, ART Catering, Inc. ("ART") (Rec. Doc. 43). The plaintiff, Stephen Pechawer, III ("Pechawer") and defendant Transocean Drilling (U.S.A.) Inc. ("Transocean") oppose the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that the motion is **DENIED.**

## I. Background

Pechawer was a seaman employed by ART as a baker aboard the M/V

TRANSOCEAN AMIRANTE, a mobile offshore drilling unit owned by Transocean.

ART, Pechawer's Jones Act employer, is a catering company servicing the oilfield

industry.  It had a contract with Transocean to provide catering services aboard the M/V

TRANSOCEAN AMIRANTE.

On June 24, 2005, Pechawer allegedly slipped and fell in a walk-in cooler in the

galley aboard the M/V TRANSOCEAN AMIRANTE.  Pechawer alleges that he was

bringing pies into the allegedly poorly lit walk-in cooler and that his foot was caught in

a gap between two pieces of "defective floor grating." Rec. Doc. 1.  He claims that he

lost his balance, fell and injured his shoulder and back.  Rec. Doc. 1.

Pechawer brought this action seeking damages under the Jones Act and general

maritime law for his alleged injuries.  In his complaint, he alleges that ART is liable to

him for maintenance and cure and Jones Act damages.  ART filed this motion for partial

summary judgment arguing that it does not owe Pechawer Jones Act damages because:

(1) it did not have a duty to provide Pechawer with a safe place to work within the

cooler aboard the M/V TRANSOCEAN AMIRANTE; (2) it did not have notice and an

opportunity to repair the alleged defect; and, (3) the condition was open and obvious.[1]

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial

---

[1]     Pechawer's claims against ART for maintenance and cure are unaffected by this motion. *See* Rec. Doc. 43.

burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations."  *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

## III. ANALYSIS

In the case at bar, Pechawer alleges that he was injured in the course and scope of his employment as a result of his employer's negligence and/or the unseaworthiness of the M/V TRANSOCEAN AMIRANTE.   It is not disputed that Pechawer is a Jones Act seaman, ART was his Jones Act employer or that the M/V TRANSOCEAN AMIRANTE was a covered vessel.  Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury.  *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc).  A Jones Act employer has a duty to provide his seamen employees with a reasonably safe place to work.  *Daigle v. L&L Marine Trans. Co.*, 322 F.Supp.2d 717, 725 (E.D.La. 2004) (*citing Colburn v. Bunge*

*Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989); Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-21 (4th ed. 2004)). This duty includes warning employees "in an effective way of dangers not reasonably known." *Patterson v. Allseas USA, Inc.*, 137 Fed.Appx. 633, 637, 2005 WL 1350594 (5th Cir. 2005) (internal quotations omitted). However, Jones Act employers do not have to warn their employees about dangers that are "open and obvious." *Id.*

A Jones Act employer's duty to provide a safe work environment is absolute and non-delegable.  *Daigle*, 322 F.Supp.2d at 725.   It applies whether the employer is the vessel owner or the owner *pro hac vice*. *Id.* (*citing* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6-21 (4th ed. 2004)).  The duty even extends to a Jones Act employer who neither owns nor controls the vessel if the employee contributes to the vessel's mission on a more or less permanent basis, so that he qualifies as a member of the crew.  *See Barrios v. Louisiana Construction Materials*, 465 F.2d 1157, 1165-66 (5th Cir. 1972) (*citing Sims v. Marine Catering Service, Inc.*, 217 F.Supp. 511 (D.C.La. 1963); *Williams v. Milwhite Sales Co.*, 197 F.Supp. 730 (D.C.La. 1961)).

The Jones Act employer's duty to provide a reasonably safe place to work is broad, but it is not a form of strict liability.  *Id.* (*citing Colburn*, 883 F.2d at 374; *Perry v. Morgan Guar. Trust Co. of N.Y., et al.*, 528 F.2d 1378, 1379 (5th Cir. 1976).  The employer

5

does not have to provide an accident proof workplace.  *See Philips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir. 1992) (*citing Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960); *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1433 (5th Cir. 1988) (per curiam), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989)).  Instead, the employer must act as a reasonable person, or reasonable employer, under like circumstances.  *Vendetto v. Sonat Offshore Drilling Co.*, 1997-3103 (La. 1999) 725 So.2d 474, 479.  If the Jones Act employer breaches his duty to provide the seaman with a reasonably safe place to work, the seaman has a cause of action under the Jones Act.  *Daigle*, 322 F.Supp.2d at 725.

To establish liability, the seaman must show that his injury was caused, in whole or in part, by his Jones Act employer's negligence.  *Hasty v. Trans Atlas Boats, Inc.*, 389 F.3d 519, 512 (5th Cir. 2004) (*citing Gautreaux*, 107 F.3d at 338-39)).  A Jones Act employer is liable for the negligence of any of its employees.  *Daigle*, 322 F.Supp.2d at 725 (internal citations omitted). The burden on the plaintiff to prove causation in a Jones Act cause of action is very light.  *See Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975). The test for causation is whether the evidence shows that the employer's negligence payed *any part*, even the slightest, in producing the injury for which damages are sought.  *See Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F.3d 658, 664 (9th Cir.

1997) (emphasis added). This test, often described as a "featherweight" causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation.

However, the employer must have actual or constructive notice of the unsafe condition and an opportunity to correct it before liability can attach. *Daigle*, 322 F.Supp.2d at 725 (*citing Colburn,* 883 F.2d at 374; *Perry,* 528 F.2d at 1379). The standard is "not what the employer subjectively knew, but rather what it objectively knew or should have known." *Webre v. Azalea Fleet, Inc.*, 2005 WL 711608 (E.D.La. 3/23/2005) (*citing Colburn*, 883 F.2d at 374 (internal quotations omitted)).

## A. DUTY

In this motion for partial summary judgment, ART argues that it did not owe Pechawer a duty to provide a safe work place within the cooler aboard the M/V TRANSOCEAN AMIRANTE.  It asserts that it only had a "limited duty" to provide a safe work place because it does not "operate or maintain" the vessel in question.  Rec. Doc. 43-4.  It points out that Transocean was responsible for maintaining, inspecting and repairing the freezer and argues that its employees had no power, authority or means by which to modify or replace the allegedly defective cooler floor or lighting.

Pechawer and Transocean, on the other hand, argue that ART did have a duty to

provide a safe workplace and exercised control over the freezer.  Pechawer points out

that Jonathan Nix, the Rig Manager of the M/V TRANSOCEAN AMIRANTE, testified

in his deposition that ART was responsible for cleaning the freezer, which included

removing and replacing the allegedly defective grating.  Rec. Doc. 53.  Also, both

Pechawer and Transocean argue that ART controlled the entire galley, was responsible

for it and that no Transocean employees worked in the galley.  Rec. Docs. 52-53.

Furthermore, Pechawer contends that ART had a system for assessing safety issues in

the galley and that ART's "Camp Boss" aboard the vessel, Bob Choice ("Choice"), had

ordered new mats for the freezer floor.  Rec. Doc. 53.

       As stated above, a Jones Act employer has a "fundamental duty," not a "limited

duty," to provide a safe working environment for his employees, regardless of whether

or not it owns or controls the vessel, if the employee contributes to the vessel's mission

on a more or less permanent basis, so that he qualifies as a member of the crew.  *See*

*Daigle*, 322 F.Supp.2d at 725; *Barrios v. Louisiana Construction Materials*, 465 F.2d at 1165-

66. "For example, if an employer, instead of owning or operating a vessel, merely

provides the catering on vessels, employees used in that service on vessels may, . . ., be

members of the crew of a vessel within the meaning of the [Jones] Act." *William*, 197

F.Supp. at 732; *see also Sims*, 217 F.Supp. at 511 (plaintiff was a messman employed

regularly on a vessel and although his employer, the catering company, did not own or have operational control over the vessel, recovery was permitted).

Here, ART was a catering company that provided catering services on vessels. ART's employee, Pechawer, was assigned to the M/V TRANSOCEAN AMIRANTE from the day that it went into service in January 2005 until his accident on June 24, 2005, on a more or less permanent basis.  Feeding the crew is essential to the mission of a vessel.  Thus, Pechawer was a member of the crew of the vessel and ART owed him a duty to provide a reasonably safe work environment, regardless of whether or not is exercised control over the vessel.  Furthermore, there are genuine issues of material fact concerning the ART's actions with regard to the safety of the galley on the M/V TRANSOCEAN AMIRANTE.

### B. NOTICE AND OPPORTUNITY TO REPAIR

ART argues that it cannot be held liable because did not have notice of the alleged problems with the cooler or an opportunity to repair them.  ART asserts that its employees filled out "START" cards to inform Transocean about safety problems in the galley, with the expectation that Transocean would fix any problems.  ART claims that, although its Camp Boss aboard the vessel collects the cards, "the cards are not for ART to act on and ART does not keep a record of them."  Rec. Doc. 52.

9

Pechawer and Transocean, however, argue that ART did have notice of the allegedly safety problems in the cooler.  First they claim that ART's Camp Boss aboard the vessel reviewed the START cards before turning them in to Transocean.  Rec. Docs. 52-53. Also, Pechawer states that ART employees filled out "ART Share Cards" which addressed safety issues and that he submitted one regarding the alleged problems with the cooler.  Rec. Doc. 53.  Furthermore, Pechawer and Transocean assert that ART had to have known about the problems with the cooler because it ordered light bulbs and floor mats for it.  Rec. Docs. 52-53.  These arguments show that there are genuine issues of material fact regarding whether or not ART was aware of the condition and had an opportunity to fix it.

## C. OPEN AND OBVIOUS

Finally, ART argues that it is not liable under the Jones Act because the alleged problems with the cooler were "open and obvious."  It asserts that the condition had to be open and obvious because Pechawer knew about the alleged safety problems before his accident and reported it in a START card. Pechewar, however, asserts that there are genuine issues of material fact regarding whether the condition was open and obvious because of the alleged problems with the lighting and visibility in the cooler.

It is immaterial whether or not the alleged safety problems in the cooler were

open and obvious.  As stated above, warning employees about dangers that are not reasonably known, i.e. "not open and obvious," is part of a Jones Act employer's duty to provide a safe work place.  *See Patterson v. Allseas USA, Inc.*, 137 Fed.Appx. 633, 637, 2005 WL 1350594 (5th Cir. 2005) (internal quotations omitted).  Pechawer does not allege that ART failed to warn him of the alleged safety problems.  In other words, he does not claim that ART breached this part of its duty to provide a safe work environment.  As a result, whether or not the alleged safety problems were "open and obvious" does not eliminate at this juncture ART's potential liability for allegedly failing to provide Pechawer with a safe working environment.


**IV. C**ONCLUSION

For the reasons state above,

IT IS ORDERED that the Partial Motion for Summary Judgement filed by ART Catering, Inc. is hereby **DENIED**.

New Orleans, Louisiana this 24th day of July, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

11